McKinney, J.,
delivered the opinion of the Court.
The complainants are the heirs-at-law of Peter Don-nelly, deceased. The hill alleges that said Donnelly died seised of an equitable interest in a lot of ground, in and adjoining the town of Shelbyville, containing about eighteen acres, which, as the bill assumes, descended to the complainants at his death, and of which they seek to avail themselves by this bill.
The facts of the ease are as follows: One M. D. Mitchell, the owner of said lot, conveyed the same by a deed of trust to three persons named therein, to 'secure the payment of certain debts specified in the deed, with power to the trustees to sell. On the 27th of July, 1829, the trustees sold the lot, and Peter Donnelly became the purchaser at the price of $2000, payable in four annual instalments — the first falling due 25th December, 1829, and the last 25th December, 1832. The trustees retained the legal title as security for the purchase-money, but executed to Donnelly a title-bond, binding themselves to convey when the purchase - money should be paid; and thereupon Donnelly took possession of the premises, and retained the same until his death. *701 On tbe 2d of June, 1832, after all tbe purchase - money bad been paid except tbe last instalment of $566 67, Donnelly made an assignment under bis band and seal, written on tbe back of said title-bond, by wbicb be “assigned all bis right, title, claim, and interest, both in law and in equity, under tbe within bond, to Joseph T. Dwyer, of Nashville, in trust, to secure tbe payment of a debt of about fifteen hundred dollars, due from Donnelly to Spofford, Tileston & Co.,” tbe defendants. Tbe instrument provides that if said debt to Spofford, Tileston & Co. “ be not paid when tbe same becomes due, tbe said. Joseph T. Dwyer, as trustee, to have full power and authority to sell tbe property mentioned in tbe within deed, either publicly or privately, or for cash or upon credit, as he may think proper, .... and is to appropriate tbe proceeds to tbe payment of my said note; and if any excess beyond what may be necessary for that purpose may remain, it is to be paid over to me.” Peter Donnelly died about tbe last of June or first of July, 1833, leaving tbe debt to Spofford, Tileston & Co. unpaid; and likewise leaving unpaid tbe last instalment of tbe purchase-money of tbe lot of ground to Mitchell’s trustees.
There is exhibited in tbe record the' copy of a deed of conveyance from tbe two surviving trustees of Mitchell (tbe other trustee having previously died) 'to tbe defendants Spofford, Tileston & Co., dated tbe 11th of March, 1835, conveying to them, in absolute fee, tbe lot of ground in question. This deed recites that a sale bad been previously made by Dwyer, tbe trustee, under tbe power and authority before mentioned, of tbe interest of Donnelly in tbe land to tbe defendants Spofford, Tileston & Co.; and it further recites that Spofford, Tileston & Co., after their *702 purchase, paid to the trustees of Mitchell the last instalment of the purchase - money of the land remaining unpaid by Donnelly.
The facts of the case are very imperfectly and obscurely presented, both in the pleadings and proof. Whether a sale in fact was made by Dwyer to the defendants, under the power before mentioned, and if so, the nature of the transaction, whether public or private, in writing or by parol, in the lifetime of Donnelly or after his death, are matters as to which there is no direct proof in the record.
The bill alleges that the defendants came into possession of the property without deed or writing of any description except the assignment of the title-bond by Donnelly to Dwyer for their benefit. The defendants in substance say that Dwyer did sell the property, under the power conferred in the assignment, and that they became the purchasers, on the terms that they should pay to Mitchell’s trustees the balance of the purchase-money remaining due to them from Donnelly; and should likewise enter a credit for the full amount of their own debt against Donnelly; and that Mitchell’s trustees had knowledge of and assented to all this, and in pursuance thereof executed to them the deed of conveyance above mentioned. But in what manner or at what time the alleged sale was made by Dwyer to them is not stated. In respect to these facts, the record is silent, except the bare recitals in the deed from Mitchell’s trustees to the defendants.
Upon this state of the case, it is insisted for the complainants that the defendants must be considered as holding the legal title to the land merely as trustees, and that the complainants are entitled to be vested with the *703 title, upon paying to the defendants the amount of their debt and the sum advanced to Mitchell’s trustees by them.
It is first to be considered whether, upon the merits of the case, any equity can be held to exist in the complainants, the statute of limitations aside for the present. It is not controverted that a sale by Dwyer, the trustee, in either mode prescribed in the instrument creating the power, would, if it had been made during the life of Donnelly, have been effectual to divest the latter of all right to the land except the naked right of redemption given by statute, which must have been asserted, if at all, within two years from the time of such sale. But it is insisted that, upon the state of the case as shown in this record, it must be taken that the power of sale given to the trustee was not in fact exercised by him at all, and perhaps could not have been after the death ’ of Donnelly, and consequently that the defendants acquired the title to said land without color of right, and must be treated as standing in the shoes of Donnelly, and as holding the samé as trustees for the complainants.
Conceding, as a general proposition, that it is incumbent on one who claims to have derived title under a power to show that the exercise of the power was conformable to the instrument by which it was created, and conceding, furthermore, that if any sale was made by Dwyer to the defendants, it was a mere delivery to them by parol agreement of the title-bond made by Mitchell’s trustees to Donnelly, and that it took place after the death of Donnelly, still the first question to be considered is, have the complainants any such equitable right as has been assumed in the argument?
1. There is nothing in the objection that the death *704 of Donnelly had the effect to revoke or annul the power. The power conferred upon Dwyer was not a mere naked power. The entire interest of Donnelly in the land was conveyed by the instrument to the trustee. It is a power coupled with an interest, and is in its very nature irrevocable, and therefore was not affected by the death of Donnelly. The act to be done by the trustee was to be done in his own name, the interest being vested in him by the instrument creating the power. In the case of a mere power, it is otherwise, because the act must be done in the name of the principal, if done at all; and.this of course becomes impossible after the death of the principal; and hence, in such case, the death works a revocation. Story on Agency, §§ 478, 488. 8 Wheat. Rep., 291; 10 Barn. & Ores., 731.
2. The next inquiry is in regard to the exercise of the power. And here it is to be observed that the presumption of law, in the absence of any thing to the contrary, is not only in favor of the exercise of the power, but if there be a legal and also an illegal mode of exercising it, and it be left doubtful from the proof which was adopted, the presumption of law in favor of meritorious claimants, or innocent purchasers, is that it was exercised in the legal mode. Marshall vs. Stephens, 8 Humph., 159.
But waiving this presumption, and taking it as established, for the purposes of this decision, that all that took place was simply an agreement by parol on the part of the trustee Dwyer to transfer the equitable interest vested in him to the defendants, in consideration of their undertaking to extinguish their debt against Donnelly, to secure the payment of which the assignment had been made, and, *705 in addition, to discharge the balance of the purchase-money due to Mitchell’s trustees, and thereupon the trustee delivered to them the title-bond which had been assigned to him by Donnelly: in this aspect of the case, which concedes to the argument for the complainants all that has been claimed by counsel, we are unable to assent to the conclusion that the complainants are entitled to the relief sought by their bill.
The argument for the complainants takes for granted that a verbal sale, or transfer of the bond for title, was nugatory. It must be borne in mind that no interest in the lot of ground was vested in Donnelly, except the simple right to acquire the title thereto on payment of the consideration - money. This was all the interest Dwyer was empowered to dispose of by the transfer to him. And might not this power be well executed by a verbal sale, or transfer of the bond for title, in the mode supposed to have been adopted by the trustee? We think it might. The statute of frauds can have no application to this question. The statute requires that a contract for the sale of land shall be in writing, and signed by the party to be charged therewith. And it has always been held by our Courts that such a “writing” may be transferred by the person to whom it was made to a third person, so as to invest the latter with all the rights which it communicated to the party to whom it was made; and, indeed, if the writing be in the form of a bond — as in the case before us — it is made assignable by the act of 1801, ch. 6, § 54, so as to give the assignee a right of action thereon in his own name. But whatever may be the form of the instrument, there is no doubt but that it may be transferred, upon a sufficient consideration, so *706 as to substitute the party to all the equities of the person to whom it was executed. The statute of frauds does not apply to the transfer of such writing: its validity depends upon general principles of the common law. And we perceive no reason why the writing may not he transferred, as well by a simple delivery as by an assignment in writing. The legal effect of the act depends not upon the mode of transfer, but the payment of the consideration-money: it is this that raises the equity, and gives effect to the transfer. See Cox vs. Cox, Peck’s Rep., 443, 458, cited 1 Meigs’s Dig., p. 542.
If Donnelly himself had made the same arrangement with the defendants assumed to have been made after his death by Dwyer; that is, had transferred the title-bond to them by mere delivery, without writing, upon the terms stated, would it not have been a valid transaction as between themselves ? And, with reference to Mitchell’s trustees, would it not have been effectual, in law, to substitute the defendants to the equitable rights of Donnelly, so as to entitle them to demand the legal title, on payment of the residue of the purchase - money due from Donnelly? We think it would, upon the doctrine of the case of Cox vs. Cox, before cited, which has been sanctioned in other more recent cases not reported.
If, then, such a disposition would have been valid if made by Donnelly himself, was it not within the spirit and scope of the power given to the trustee to effect the same disposition? We think it was. The trustee was invested with the entire interest of Donnelly — with complete dominion and power of disposition over the property. He possessed an unlimited discretion to sell, “either publicly or privately, for cash or on credit, as he might think *707 proper;” and it cannot admit of a doubt that it was competent for him to resort to any mode of disposition recognized hy law.
If this disposition hy the trustee had taken place in the lifetime of Donnelly — admitting it to hare been, as it unquestionably was, an advantageous arrangement for him, founded on an adequate consideration, and free from any imputation of fraud or unfairness — could Tie have impeached the transaction on the ground either of want of power, or an illegal exercise of power, on the part of the trustee? Certainly not, if the principle he correct that the equity could be disposed of by the mere delivery of the bond for title. And if Donnelly could not have impeached the title of the defendants, neither can the complainants.
3. But if the foregoing views were incorrect, still, upon another ground, the bill must be dismissed. If the transfer of the bond for title were held to be inoperative, under the circumstances, to communicate any interest to the defendants, then . it would necessarily follow that the equitable title continues in the trustee, by force of the assignment to him. Certain it is, that it was divested out of Donnelly; and, on his death, nothing passed to the complainants except the mere equity of redemption; and Dwyer, the trustee, in whom, upon this assumption, the equity still remains, is not a party to the bill.
Erom the foregoing views, it is scarcely necessary to inquire whether or not the statute of limitations bars the relief sought by this bill, if all other obstacles were removed. It is manifest, however, that inasmuch as the defendants have held the actual adverse possession of the property since the date of their deed, in 1835, and all *708 the complainants, except one, having been from -without the saving of the statute in favor of infants for more than three years next before the filing of the hill, and no other disability, except infancy, having existed as to either at the commencement of the defendants’ adverse possession — if the defendants could be fixed with a trust at all, in favor of the complainants, it would be merely a constructive trust, and consequently within the operation of the statute of limitations, and all would be barred except the minor.
The decree will be affirmed.